Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In re

**Paul R.A. Janzen** and **Caroline Hoffman Janzen**,

Debtors.

Case No. 24-31729-dwh7

**MEMORANDUM DECISION GRANTING MOTION TO AVOID JUDGMENT LIEN OF KHM INVESTMENTS, LLC**[1]

### I.   Introduction

Paul and Caroline Janzen, the chapter 7 debtors, move to avoid the judgment lien on their residence held by KHM Investments, LLC.[2] For the reasons that follow, I will grant the motion.

---

[1] This disposition is specific to this action. It may be cited for whatever persuasive value it may have.
[2] ECF No. 41.

Page 1 – MEMORANDUM DECISION GRANTING MOTION TO  etc.

## II.  Background

The Janzens filed their petition initiating this chapter 7 case on June 20, 2024.

## III.  Findings of Fact

At the evidentiary hearing on the motion, Caroline Janzen testified on behalf of herself and Paul Janzen. Because they share a last name, I will refer to them by their first names.

I find the following facts.

### A.  *Value of the residence*

The residence is worth $605,000.

Caroline and Paul own the residence. She testified without objection that it is worth $605,000.

KHM argued in its objection that "the valuation presented by the Debtors does not appear to accurately value the Lien Property,"[3] and KHM attached a Redfin report estimating the value at $634,507. At the evidentiary hearing, KHM offered no value evidence, and as I explain in part IV.B below, even if the value were $634,507, the extra value would be immaterial.

### B.  *Existence and amount of the Shellpoint and Rojeski liens*

#### 1.  **Shellpoint Mortgage Servicing lien**

Shellpoint Mortgage Servicing has a lien, senior to KHM's judgment lien, for $494,000.

---

[3] ECF No. 43 at 4.

Page 2 – MEMORANDUM DECISION GRANTING MOTION TO  etc.

Caroline testified that Shellpoint has a first mortgage on the residence for approximately $494,000 as of the petition date and that payments on that loan are "current now." The mortgage secures an acquisition loan.

The record does not reflect whether or in what amount periodic postpetition payments to Shellpoint include principal amortization, such that the current balance would be reduced since the petition date. But as I explain in part IV.B below, any postpetition reduction in the Shellpoint loan balance would likely be immaterial.

### 2. Richard Rojeski lien

Richard Rojeski has a lien, junior to Shellpoint and senior to KHM, for $300,000.

Caroline testified that Rojeski lent the Janzens $300,000, and they granted him a trust deed on the residence to secure the loan. The trust deed, which was recorded,[4] and a promissory note for the loan amount[5] were admitted in evidence. Both were signed by the Janzens on August 31, 2022, and their signatures were notarized. The note requires payment of interest of 10 percent per year in 72 monthly installments of $5,557.75. Attached to the note is an amortization schedule showing the projected loan balance after each of the projected 72 payments, if they are had been made timely.

---

[4] ECF No. 50 Ex. 1.
[5] ECF No. 50 Ex. 2.

Page 3 – MEMORANDUM DECISION GRANTING MOTION TO  etc.

The focus of cross-examination of Caroline on behalf of KHM was whether the Rojeski loan had in fact been made and was not just a fabrication by the Janzens.

Rojeski is the father of a former paralegal employee of the Janzens' business, Janzen Legal Services LLC. He funded the loan by giving the Janzens $200,000 in currency and a $100,000 cashier's check. The currency was in "piles" of $5,000 each, consisting mostly of $100 bills, including "some very old style bills." Caroline understands that he is a very successful businessman, and he "socked away" the currency and other funds "over his life." The Janzens kept the $200,000 in currency in "a giant cash box," taking currency out from time to time to make bank deposits. At about the time of the loan, they deposited the cashier's check in an account in the name of their business, and as they needed additional funds, they deposited currency. In response to a question on behalf of KHM, she acknowledged that at the meeting of creditors, Paul had said that the entire $300,000 had been in the form of currency, but she, not Paul, had "done the transaction," and he was mistaken about the amount of currency.

Caroline testified that the balance due to Rojeski remained $300,000 on the petition date. Other than challenging whether the Rojeski loan had been made at all, KHM did not challenge her testimony that the current loan balance was $300,000. In any case, that number is plausible. The Janzens made only five to six of the monthly installment payments to Rojeski.

According to the note amortization schedule, if they timely made the first six payments, the balance due after the sixth payment—due approximately March 1, 2023–would have been $281,267. Interest on that amount at 10 percent per year through the petition date would be approximately $36,700, and additional interest through the hearing date would be approximately $20,200 more. In other words, if only the first six installment payments had been made, the current Rojeski loan balance would now be at least $300,000.

    I agree with KHM that aspects of the Rojeski loan are unusual for any lender, much less one by a successful businessperson. First, it is unusual to lend $300,000 to two individuals on the strength of a second-position lien on their residence, such that the lender might have to satisfy the first-position lien to have any practical resort to the security—especially when the net value of the security is substantially less than the loan. Here, the value of the residence net of the Shellpoint loan is $111,000 ($605,000 less $494,000), far less than the $300,000 Rojeski loan. Second, it is unusual for a lender to have on hand several hundred thousand dollars in stacks of old currency and to fund a loan with that currency (even in part), rather than with a check, which could serve as proof of the loan. Third, it unusual for a lender to fail to declare a default and seek to foreclose a secured loan after many months without receiving payments. Here, the latest time when the Janzens had to

Page 5 – MEMORANDUM DECISION GRANTING MOTION TO  etc.

have been in default to Rojeski, entitling him to demand payment and foreclose, was early March 2023, two years ago.

I also agree with KHM that it is unusual for a borrower to handle the proceeds of a loan as the Janzens did. Keeping the currency out of a bank increased the risk that it would be stolen, and making periodic deposits of currency created the risk of miscounting the currency and failing properly to account for it on the Janzens' financial records.

But that the loan and the Janzens' handling of the currency was unusual is not dispositive of whether I should believe Caroline's testimony. The nonbusinesslike way the Janzens handled the borrowed currency (not promptly depositing it in a bank) is consistent with other nonbusinesslike aspects of the operation of their business, including its failure to keep current on taxes (the business was "behind on taxes," and the loan enabled it "to get caught up"), Paul's withdrawal from the business, and the business's ultimate separate bankruptcy despite having the benefit of the Rojeski loan.

Caroline's testimony contained no internal logical contradictions that would deprive it of persuasive value. And her story is consistent with the note and trust deed having been notarized on August, 31, 2022, and the trust deed having been recorded in September 2023; any scheme to concoct the Rojeski lien would have had to begin no later than August 31, two months before the Janzens entered into their settlement agreement with KHM on October 28,[6]

---

[6] ECF No. 53 Ex. 2 at 42, 48.

Page 6 – MEMORANDUM DECISION GRANTING MOTION TO  etc.

four months before their settlement-agreement payment was due on January 28, 2023,[7] and six months before entry of KHM's judgment.[8]

Caroline gave her testimony about the Rojeski lien under the penalty of perjury, and that potential penalty also applies to other sworn statements by the Janzens. Their schedule of secured claims lists Rojeski as holding a $300,000 claim secured by their residence;[9] both Janzens signed a declaration under the penalty of perjury that the schedules were true and correct.[10] Paul confirmed the making of the Rojeski loan at the meeting of creditors, where examination of the debtor must be under oath.[11].

Finally, I received no evidence affirmatively demonstrating that Rojeski does not have a lien for $300,000.

In other words, although the evidentiary strength of Caroline's testimony to establish the existence of the Rojeski loan is less than it might have been, it is nonetheless some evidence that the loan was made and remains unpaid, and I have no contrary evidence.

### C.    *Exemption*

The residence is exempt to the extent to $50,000.

---

[7] ECF No. 53 Ex. 2 at 43 § 1.1.
[8] ECF No. 53 Ex. 1.
[9] ECF No. 11 Sched. D at 3 item 2.4.
[10] ECF No. 11 OF 106Dec.
[11] Fed. R. Bankr. P. 2003(b)(1).

In their schedules filed on July 11, 2014, the Janzens claimed the residence as exempt to the extent of $50,000.[12] No one has objected to the exemption, and the deadline to do so has passed.[13]

## IV. Conclusions of law

### A. *Jurisdiction and authority*

The district court has jurisdiction over this action, a civil proceeding arising under title 11 of the U.S. Code.[14] The district court has referred to this court all bankruptcy cases and proceedings in this district.[15]

The motion, if granted, would affect the debtor-creditor relationship between the Janzens and KHM in that it would change KHM's claim from secured to unsecured, and the motion is thus a core proceeding[16] that this court may hear and determine.[17]

### B. *The Janzens were not required to include evidence with their motion.*

In KHM's response to the motion, it argued that the motion was legally deficient because the Janzens did not include in or file with their motion any evidence supporting their allegations of the value of the residence or the existence of the Shellpoint and Rojeski liens.[18]

No rule requires that a lien-avoidance motion include evidence.

---

[12] ECF No. 11 Sched. C at 1 item 2, first entry.
[13] Fed. R. Bankr. P. 4003(b)(1).
[14] 28 U.S.C. § 1334(b).
[15] LR 2100-2(a)(1).
[16] 28 U.S.C. § 157(b)(2)(O).
[17] 28 U.S.C. § 157(b)(1).
[18] ECF No. 43 at 2–5.

Page 8 – MEMORANDUM DECISION GRANTING MOTION TO  etc.

## C.  *The Janzens have satisfied the elements of lien avoidance.*

The debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that the lien impairs an exemption to which the debtor would have been entitled under 11 U.S.C. § 522(b) if the lien is a judicial lien, with inapplicable exceptions.[19] A lien impairs an exemption to the extent the sum of the lien, all other liens on the property, and the exemption amount the debtor could claim absent any liens exceeds the property value absent any liens.[20]

The lien of KHM's judgment is a judicial lien.

The KHM lien is at least $140,000.[21] The Shellpoint and Rojeski liens are $494,000 and $300,000, respectively, and the exemption amount is $50,000. The sum of those amounts is at least $984,000, which exceeds the residence value by $379,000, which is the impairment amount. Because the impairment amount exceeds the KHM lien amount, the lien is avoidable in its entirety.

That result is not sensitive to potential changes in the figures included in the calculation. First, if the KHM lien exceeds $140,000, each dollar added to the lien would increase the impairment amount by a dollar. Second, if the property value were $634,507, rather than $605,000, the extra value would decrease the impairment amount but only by $29,507 to $349,493, which still

---

[19] 11 U.S.C. § 522(f)(1)(A).
[20] 11 U.S.C. § 522(f)(2).
[21] ECF No. 53 Ex. 1.

Page 9 – MEMORANDUM DECISION GRANTING MOTION TO  etc.

exceeds the KHM lien amount. Finally, if the Shellpoint loan balance has been reduced by postpetition amortizing payments, the reduction would have to be by nearly $200,000 (more than 40 percent of the petition-date balance) to approach an impairment amount that would result in less than complete avoidance of the KHM lien. That amount of principal reduction in less than a year based only on regular amortizing payments is a practical impossibility, and I have no evidence that the Janzens made additional principal-reduction payments since the petition date.

The lien is avoided.

## V.     Conclusion

Mr. Piteo should lodge a proposed order granting the motion.

###